UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PELMAN, *et al.*,<br><br>        Plaintiffs,<br><br>  – v –<br><br>McDONALD'S CORP.<br><br>        Defendant. | 02 Civ. 07821 (DCP)[1] |

[Plaintiffs' motion for class certification and, in the
alternative, issue class certification is denied.]

Dated: October 27, 2010

    <u>Samuel Hirsch & Associates, P.C.</u> (<u>Samuel Hirsch</u>) for
Plaintiffs.

    <u>Winston & Strawn LLP</u> (<u>Thomas J. Quigley</u>, <u>Bradley E. Lerman</u>,
<u>Bruce R. Braun</u>, <u>Scott P. Glauberman</u>, <u>Melissa A. Gabriel</u> and
<u>Thomas P. O'Connor</u>) for Defendant.

<u>OPINION AND ORDER</u>

    **Pogue, Judge:** Plaintiffs in this action are New York State
consumers claiming, pursuant to Section 349 of New York's General
Business Law ("GBL § 349"), exposure to and injury from Defendant
McDonald's Corporation's allegedly deceptive marketing scheme.
Plaintiffs claim that the effect of Defendant's affirmative
representations and material omissions throughout this marketing
scheme – from 1985 until the filing of this case in 2002 – was to
mislead consumers into falsely believing that Defendant's food

---

    [1] Judge Donald C. Pogue of the United States Court of
International Trade, sitting by designation.

products may be consumed on a daily basis without incurring any adverse health effects, and that, as a result of this marketing scheme, Plaintiffs and putative class members suffered injury in the form of, *inter alia*, the development of certain adverse medical conditions.  The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (2000).

Before the court is Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3) or, in the alternative, for class certification solely with respect to the litigation of issues common to all putative class members, pursuant to Rule 23(c)(4).  As explained below, because establishment of the causation and injury elements of Plaintiffs' claims will necessitate extensive individualized inquiries, the court finds that the questions of law and fact which would be common to putative class members would not predominate over questions affecting only individual members.  Accordingly, certification of this action for class litigation under Rule 23(b)(3) is not appropriate. See Fed. R. Civ. P. 23(b)(3).

Moreover, class certification under Rule 23(c)(4) is not appropriate at this time.  Although Plaintiffs' claim contains issues which may be common to potential class members, the resolution of which is susceptible to proof by common evidence on the basis of objective standards, there is insufficient evidence

2

to establish the existence of a class of persons who hold
identical claims, on the basis of identical injuries, to those
allegedly suffered by Plaintiffs – i.e., the evidence presented
is not sufficient to satisfy the numerosity requirement of
Rule 23(a)(1). <u>See, e.g.</u>, <u>Charron v. Pinnacle Gr. N.Y.</u>, __ F.R.D.
__, No. 07 Civ. 6316(CM)(RLE), 2010 WL 1752501, at *19 (S.D.N.Y.
Apr. 27, 2010) (issue classes certified under Rule 23(c)(4) must
satisfy the criteria of Rules 23(a) and (b) with respect to the
issues certified).

The court therefore denies Plaintiffs' motion for class
certification in its entirety.

**BACKGROUND**

A.   <u>Procedural History</u>

Plaintiffs originally commenced this suit in the State
Supreme Court of New York, Bronx County, on August 22, 2002.
Plaintiffs claimed that Defendants McDonald's Corporation,
McDonald's Restaurants of New York, Inc., McDonald's 1865
Bruckner Boulevard Bronx, New York, and McDonald's 2630 Jerome
Avenue, Bronx, New York (collectively "McDonald's") engaged in
deceptive business practices in making and selling their
products, and that "this deception has caused the minors who have
consumed McDonald[']s' products to injure their health by
becoming obese." <u>Pelman v. McDonald's Corp.</u>, 237 F. Supp. 2d 512,
516 (S.D.N.Y. 2003) ("<u>Pelman I</u>").

3

McDonald's removed the action to this Court on September 30, 2002, alleging that Plaintiffs had fraudulently joined non-diverse parties to defeat diversity jurisdiction under 28 U.S.C. § 1332.  By opinion of January 22, 2003, the court denied Plaintiff's motion to remand back to the Supreme Court of New York, Pelman I, 237 F. Supp. 2d at 521-23, concluding that "there is no reasonable basis, based on the pleadings, for liability against the non-diverse defendants in light of the claims alleged." See id. at 521 (citation omitted); 523 ("Clearly what is at issue in this lawsuit is the national menu and national policy of McDonald's Corp., and the plaintiffs' real beef is with McDonald's Corp.").[2]

Having satisfied itself of jurisdiction, the court, by the same opinion of January 22, 2003, granted Defendant's Rule 12(b)(6) motion to dismiss all counts of Plaintiffs' complaint for failure to state a claim upon which relief may be granted, id. at 524-43, but granted Plaintiffs leave to amend their complaint. Id. at 543.

Plaintiffs filed their first amended complaint ("FAC") on February 19, 2003.  On September 3, 2003, the court again granted

_____

[2] Because "Defendant McDonald's Corp. is a Delaware corporation with its principal place of business . . . [in] Illinois," id. at 519, the court held that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Id. at 521-23.  In light of this ruling, the court will refer to the Defendant in the singular.

4

Defendant's renewed Rule 12(b)(6) motion, dismissing Plaintiffs'
complaint in its entirety, without leave to amend. <u>Pelman v.
McDonald's Corp.</u>, No. 02 Civ. 7821 (RWS), 2003 WL 22052778,
at *14 (S.D.N.Y. Sept. 3, 2003) ("<u>Pelman II</u>").[3]

Plaintiffs appealed solely the district court's dismissal of
counts I, II and III – each brought under GBL § 349[4] – of their
FAC. <u>Pelman v. McDonald's Corp.</u>, 396 F.3d 508, 509-11 (2d Cir.

---

[3] The court noted that, in <u>Pelman I</u>, "[t]he plaintiffs ha[d]
been warned that they must make specific allegations about
particular advertisements that could have caused plaintiffs'
injuries, and to provide detail on the alleged connection between
those injuries and the consumption of McDonald's foods." <u>Pelman
II</u>, 2003 WL 22052778, at *14.  The court went on to conclude
that, because plaintiffs "ha[d] failed to remedy the defects of
the initial complaint in the face of th[ese] warnings[,]
[g]ranting leave to amend would therefore [have been] futile."
<u>Id.</u>

[4] GBL § 349 makes unlawful "[d]eceptive acts or practices in
the conduct of any business, trade or commerce or in the
furnishing of any service" in the State of New York, N.Y. Gen.
Bus. L. § 349(a), and provides a private right of action to any
person "injured by reason of" such acts or practices to seek an
injunction, actual damages, or both. <u>Id.</u> at § 349(h). Count I of
Plaintiffs' FAC alleged that the combined effect of Defendant's
advertising scheme during the years from 1987 until 2002 "was to
create the false impression that [Defendant's] food products were
nutritionally beneficial and part of a healthy lifestyle if
consumed daily." <u>Pelman III</u>, 396 F.3d at 510.  Count II alleged
that Defendant's food products were substantially less healthy
than represented by Defendant, in light of Defendant's manner of
food processing and use of certain additives. <u>Id.</u>  And Count III
alleged that Defendant "deceptively represented that it would
provide nutritional information to its New York customers when in
reality such information was not readily available at a
significant number of McDonald's outlets in New York visited by
the plaintiffs and others." <u>Id.</u> (footnote omitted).

2005) ("<u>Pelman III</u>").[5]  The United States Court of Appeals for
the Second Circuit ("Second Circuit") vacated the district
court's dismissal of these claims, holding that, "because a
private action under [GBL] § 349 does not require proof of the
same essential elements (such as reliance) as common-law fraud,
an action under [GBL] § 349 is not subject to the pleading-with-
particularity requirements of Rule 9(b), Fed. R. Civ. P., but
need only meet the bare-bones notice-pleading requirements of
Rule 8(a), Fed. R. Civ. P," <u>id.</u> at 511 (citations omitted), and
that "[s]o far as the [GBL] § 349 claims are concerned, the [FAC]
more than meets the requirements of Rule 8(a)." <u>Id.</u> at 512
(footnote omitted).

Following a remand to this Court for further proceedings
consistent with the Second Circuit's opinion in <u>Pelman III</u>, <u>see</u>
<u>Pelman III</u>, 396 F.3d at 512, the court granted in part
Defendant's Rule 12(e) motion for a more definite statement,
requiring Plaintiffs to "identify the advertisements that
collectively amount to the alleged deceptive nutritional scheme."
<u>Pelman v. McDonald's Corp.</u>, 396 F. Supp. 2d 439, 445 (S.D.N.Y.
2005) ("<u>Pelman IV</u>").  In addition, the court required Plaintiffs

---

[5] The FAC additionally included a fourth count, which
Plaintiffs voluntary dismissed. <u>Pelman III</u>, 396 F.3d at 510
n.1.  Plaintiffs did not challenge the district court's
conclusion that all individual claims of the parent co-plaintiffs
were time-barred, <u>id.</u>, nor the dismissal of all claims asserted
under Section 350 of New York's General Business Law. <u>Id.</u> at 511.

to provide "a brief explanation of why the advertisements are materially deceptive to an objective consumer." Id.[6] In addition, "in accordance with GBL § 349's requirement that [P]laintiffs' injuries be 'by reason of' [D]efendant's conduct, the court directed Plaintiffs [to] provide a brief explanation of how [P]laintiffs were aware of the nutritional scheme[] they allege to have been deceptive." Id. at 446 (citing Stutman v. Chem. Bank, 731 N.E.2d 608, 612 (N.Y. 2000)).[7] The court also required Plaintiffs to "outline the injuries that were suffered by each plaintiff 'by reason of' defendant's alleged deceptive

---

[6] The court reasoned that, "[j]ust as defendant cannot reasonably admit nor deny that its practices were misleading if [Defendant] [does not] know which ads comprised the alleged deceptive nutritional scheme, [it] cannot do so if not given notice of why plaintiffs[] allege [the] nutritional scheme[] [was] objectively deceptive to consumers." Pelman IV, 396 F. Supp. at 445. See also id. at 443 (discussing standard for granting Rule 12(e) motions and quoting Humpherys v. Nager, 962 F. Supp. 347, 352-53 (E.D.N.Y. 1997) ("[A] 12(e) motion is proper when a complaint pleads a viable legal theory, but is so unclear that the opposing party cannot respond to the complaint.")); id. at 444 (noting that "[t]he standard for whether an act or practice is misleading [under GBL § 349] is objective, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct" (citing Marcus v. AT&T, 138 F.3d 46, 64 (2d Cir. 1998); Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 745 (N.Y. 1995))).

[7] The court denied Defendant's Rule 12(e) motion in so far as it requested the Plaintiffs to "confirm that they saw or heard each advertisement in New York before the lawsuit began," Pelman IV, 396 F. Supp. 2d at 445, holding that "[P]laintiffs need not confirm that each plaintiff saw or heard each advertisement." Id. at 446.

nutritional scheme." Id. (quoting N.Y. Gen. Bus. L. § 349).[8]

Plaintiffs filed their second amended complaint ("SAC") on December 12, 2005.  By opinion of September 16, 2006, the court denied Defendant's motion to strike and dismiss the SAC for failure to comport with the court's orders in Pelman IV. Pelman v. McDonald's Corp., 452 F. Supp. 2d 320, 328 (S.D.N.Y. 2006) ("Pelman V").[9]  The court noted that:

> the SAC identifies a number of advertisements being claimed as part of the Defendant's deceptive practices[;] . . . outlines why the advertisements are objectively deceptive[;] . . . alleges that Plaintiffs were aware of McDonald's deceptive practices through their exposure to the advertisements and statements

---

[8] The court also denied Defendant's Rule 12(e) motion in so far as it requested the Plaintiffs to provide a description of how each advertisement injured each plaintiff, id. at 446, holding that "Plaintiffs' claims in this case are based upon [] a deceptive scheme, which the Second Circuit held sufficient for Rule 8(a) notice pleading." Id. at 446 & n.1 (noting that "[t]he scheme alleged [in the FAC] is comprised of advertisements and statements made and/or published by [D]efendant, but [P]laintiffs have not alleged that each and every advertisement that comprises a part of this scheme in and of itself amounts to a deceptive practice under GBL § 349").

[9] In accordance with unchallenged portions of Pelman II, see supra note 5, the court held that "[t]hose portions of the SAC that refer to parents as individual co-plaintiffs shall be stricken, as shall the Plaintiffs' allegations concerning McDonald's 'cholesterol-free' french fry representation and McDonald's Mighty Kids Meals." Pelman V, 452 F. Supp. 2d at 328; see also id. at 327.
In addition, in response to Defendant's objection to Plaintiffs' "intention to add 'other' advertisements to their case at some later date," Pelman V, 452 F. Supp. 2d at 326 (quoting SAC ¶ 506), the court "concluded that Plaintiffs shall be limited to the advertisements identified in the SAC, with leave granted to permit Plaintiffs to amend the SAC with additional advertisements for good cause shown." Id.

annexed to their pleading and that such statements were
disseminated in the specified fora of[] television,
radio, internet, magazine, periodical, in-store poster
advertisements, and press releases issued in New York
State from 1985 and continuing through filing in
2002[;] . . . [and] alleges that each named Plaintiff
was injured as a result of Defendant's practices, in
the following respects: obesity, elevated levels of
Low-Density Lipoprotein, or LDL, more commonly known as
'bad' cholesterol ["LDL"], significant or substantial
increased factors in the development of coronary heart
disease, pediatric diabetes, high blood pressure,
and/or other detrimental and adverse health effects
and/or diseases as medically determined to have been
causally connected to the prolonged use of Defendant's
products[].

Id. at 323 (citing SAC ¶¶ 558, 564, 570, 576, 582, 588, 594, 600,

617, 623, 629, 635, 641, 647, 653, & 659).  The court then held

that, because "Plaintiffs need not have seen or heard each

advertisement, but rather only to have been exposed to them in

some manner," id. at 324 (citing Pelman IV, 396 F. Supp. 2d

at 445-46), the SAC sufficiently described how Plaintiffs were

aware of the marketing scheme alleged to be deceptive, id.

at 325, and that, "[c]ontrary to McDonald's contentions, . . .

the SAC outlines the injuries sustained by each Plaintiff in a

manner sufficient for McDonald's to answer." Id. at 326.

Now pending before the court is Plaintiffs' motion to

certify the class requested in the SAC.[10]

_____

[10] On July 26, 2007, Defendant filed a motion to strike all
class allegations from the SAC.  Plaintiffs filed their cross-
motion for class certification and an order denying Defendant's
motion to strike class allegations from the SAC on October 16,
2007. (Plaintiffs' class certification motion is dated October 9,
2007, but was filed with the court on October 16, 2007.) A

B.   The Claims of the Second Amended Complaint ("SAC")

Count I of Plaintiffs' SAC alleges that Defendant, "its
respective agents, servants, and[/]or employees, engaged in
unfair and deceptive acts and practices, in violation of [GBL
§ 349], by allegedly representing, subjecting, exposing, and/or
attempting to mislead the Plaintiffs, putative class members, New
York State users and consumers, from 1985 and continuing
thereafter to 2002,[11] that its certain foods, including but not
limited to[] Chicken McNuggets, Filet-O-Fish, Chicken Sandwich,
French Fries and/or Hamburgers were substantially healthier-than-

_____

pretrial conference was held on April 9, 2008.  Following Judge
Sweet's recusal, and reassignment of the case to Judge Stein,
another pretrial conference was held on February 24, 2009, at the
close of which conference the court ordered that all pending
motions to compel discovery, previously filed by both Plaintiffs
and Defendant, were dismissed with leave to renew after the Court
rules on the motions for class certification.  By order of March
27, 2009, the court directed the Clerk to close Defendant's
motion to strike class allegations, "assur[ing] the parties that
in resolving the remaining motion, Plaintiffs' motion to certify
the class, the Court will consider, as appropriate, all papers,
arguments, and evidence submitted on this issue, whether
originally submitted as part of Defendant's motion to strike the
class allegations, or as part of Plaintiffs' cross motion to
certify the class." [Dkt. No. 136] (The case was thereafter
reassigned to the present Judge.)

[11] While the FAC alleged a scheme dating from 1987 until
2002, see Pelman III, 396 F.3d at 510, the SAC alleges a scheme
dating from 1985 until 2002 (SAC ¶¶ 548-49; 605; 607), although
certain aspects of the scheme are alleged in the SAC to have
taken place during shorter periods within this overall period of
time (see, e.g., SAC ¶¶ 519 (alleging press releases disseminated
in New York State "[i]n 1987 and continuing to 2002"); 520
(same); 526 (alleging certain failures to disclose "from 1986
through 2002"); 607 (alleging certain failures to disclose "from
July 23, 1990 through May 21, 2001")).

in-fact, in contradiction to medically and nutritionally established acceptable guidelines." (SAC ¶ 548.)

Specifically, Plaintiffs allege that Defendant subjected, exposed and/or attempted to mislead Plaintiffs and putative class members, from 1985 until 2002, "with misleading nutritional claims, in widespread advertising campaigns, promotions, brochures, press releases, 'consumer-oriented' statements, in various media and print outlets, that its certain foods were healthy, nutritious, of a beneficial nutritional nature, and/or were easily part of anyone's healthy daily diet, each and/or all claims being in contradiction to medically and nutritionally established acceptable guidelines." (Id. at ¶ 549.[12])  Plaintiffs claim that, "as a direct, foreseeable and proximate result of the Defendant's deceptive practice to misrepresent the nutritional attributes of its foods," Plaintiffs and putative Class Members suffered injury in the form of the financial costs of Defendant's products; "false beliefs and understandings as to the nutritional

---

[12] (See also id. at ¶ 550 (alleging that the nutritional scheme alleged to be deceptive created "the false nutritional beliefs that [Defendant's] foods could be easily consumed as part of a healthy daily diet without any significant ill effects or adverse health or nutritional ramifications"); id. at ¶ 551 ("[A]ctually, if consumed on a continual basis several times per week over several years, [Defendant's represented products] could be shown to be significant and/or substantial factors in the development of pediatric diabetes and type II diabetes, coronary heart disease, high blood pressure, obesity, elevated levels of [LDL], increased risks for cancer, and other detrimental and adverse health effects.").)

contents and effects of Defendant's food products"; and "obesity,
elevated levels of [LDL], significant or substantial increased
factors in the development of coronary heart disease, pediatric
diabetes, high blood pressure and/or other detrimental and
adverse health effects and/or diseases as medically determined to
have been causally connected to the prolonged use of Defendant's
products . . . ."[13]

Count II of Plaintiffs' SAC alleges that Defendant, "its
respective agents, servants, and[/] or employees, engaged in
unfair and deceptive acts and practices, in violation of [GBL
§ 349], by engaging in an ingredient disclosure scheme, from 1985
and continuing thereafter to 2002, whereby the Defendant is
alleged to have failed to adequately disclose its use of certain
additives and that the manner of its food processing rendered
certain of its foods, specifically French Fries, hash browns,
chicken McNuggets, fish and/or chicken products, substantially
less healthy than were represented to Plaintiffs, putative Class
Members, New York State residents and consumers, in widespread
advertising campaigns, 'consumer-oriented' statements,
promotions, brochures, press releases, corporate nutritionist
statements, and Internet disseminations, store-posters, and other

---

[13] (SAC ¶¶ 556-58, 562-64, 568-70, 574-76, 580-82, 586-88,
592-94 (alleging injuries sustained by named Infant Plaintiffs);
598-600 (alleging identical injuries sustained by putative class
members).)

means of media communications." (SAC ¶ 605.[14])  Plaintiffs allege

that, "as a direct, foreseeable and proximate result of the

Defendant's deceptive ingredient disclosure scheme," Plaintiffs

and putative Class Members suffered injuries identical to those

claimed in Count I.[15]

Count III of Plaintiffs' SAC alleges that Defendant, "its

respective agents, servants, and[/]or employees, engaged in

unfair and deceptive acts and practices, in violation of [GBL

§ 349], by representing, warranting and issuing promissory

statements, that it provide[d] and w[ould] continue to provide,

nutritional brochures including disclosures regarding the

ingredients, and amount of calories, protein, carbohydrates, fat,

cholesterol and sodium, on all of its products, at all its

---

[14] With respect to Defendant's French Fries product,
Plaintiffs' allegation that Defendant, "from July 23, 1990
through May 21, 2001, . . . fail[ed] to disclose its use of
certain beef flavoring, food processes and hydrogenated vegetable
oils . . ., after affirmatively representing that its product
would be made with only '100% vegetable oil' with no beef and
other cholesterol causing ingredients . . ., would thereafter be
included in the processing and formulation of its French Fries
product" (SAC ¶ 606), has been stricken as objectively non-
deceptive. See Pelman V, 452 F. Supp. 2d at 327; Pelman II, 2003
WL 22052778, at *13.

[15] (See SAC ¶¶ 615-17, 621-23, 627-29, 633-35, 639-41, 645-
47, 651-53, 657-59; compare with id. at ¶¶ 556-58, 562-64, 568-
70, 574-76, 580-82, 586-88, 592-94, 598-600.  With respect to all
products at issue, Plaintiffs allege that they and the putative
Class Members "would not have purchased and/or consumed [these
products] in their entire[t]y, or on such frequency, had they []
been aware of the ingredients which were failed to have been
adequately disclosed [] by the Defendant." Id. at ¶ 609.)

store/franchise and drive-through locations in conspicuous
locations for study by consumers prior to purchase" (SAC ¶ 665),
when in fact "the nutritional information which the Defendant
represent[ed] and warrant[ed] was not adequately available to the
Plaintiff consumers and putative Class members at a significant
number of the Defendant's New York stores for inspection upon
request." (Id. at ¶ 667).[16]  Plaintiffs allege that, "by reason
of the Defendant's deceptive practices, the Infant-Plaintiffs
[and putative Infant Class Members] have been caused to believe
said nutritional material]s were present, when in fact said data
was not available[,] resulting [in] preventing the Infant-
Plaintiff[s] and purchaser[s] from making informed decisions
about the consumption of Defendant's certain foods." (Id. at
¶¶ 674, 676.)

---

[16] In addition to claiming that Defendant falsely
represented the availability of certain nutritional information
in its New York outlets (SAC ¶¶ 665-67), Plaintiffs also claim,
as part of Count III of their SAC, that the non-disclosure of
this information, regardless of Defendant's representations as to
its availability, is itself violative of GBL § 349. (See SAC
¶ 681 (alleging, the context of Count III of the SAC, that
Defendant "failed to adequately label packages and containers,
failed to properly account to the users and consumers [] the
ingredients, processes and/or added nutritional values of such
processing and attributes [of] products, including but not
limited to, the ingredients, quantities and qualities of fat,
salt, sugar, and cholesterol content[] contained within
[Defendant's] food products"; that the Defendant "failed to
provide and/or display the nutritional processes or contents of
[Defendant's] food products at points of purchase, including
drive-through locations"; and that Defendant "failed to
adequately disseminate the nutritional values and contents of the
aforesaid respective food products").)

Because Counts I, II, and III of Plaintiffs' SAC each claim identical injuries[17] as a result of the same allegedly deceptive marketing scheme[18] – alleged in each count to be materially deceptive as a result of affirmative misrepresentations (Count I) and/or material omissions or non-disclosures (Counts II and III) – the court concludes that Plaintiffs' SAC presents a single cause of action under GBL § 349.

C.   Plaintiffs' Request for Class Certification

Plaintiffs' putative Class Members "consist of New York State residents, infants, and consumers, who were exposed to Defendant's deceptive business practices, and as a result thereof, purchased and consumed the Defendant['s] products in New York State stores/franchises, directly causing economic losses in the form of the financial costs of the Defendant's goods, causing significant or substantial factors in the development of diabetes, coronary heart disease, high blood pressure, obesity,

---

[17] (SAC ¶¶ 556-58, 562-64, 568-70, 574-76, 580-82, 586-88, 592-94, 598-600, 615-17, 621-23, 627-29, 633-35, 639-41, 645-47, 651-53, 657-59; see id. at ¶¶ 674, 676.)

[18] (See SAC ¶¶ 121; 133; 147; 157; 171; 182; 195; 209; 223; 239; 253; 271; 283; 295; 312; 335; 347; 358; 386; 418; 433; 443; 457; 473; 498 (each affirmative representation and material omission alleged "as being collectively part of the Defendant's long-term deceptive scheme and campaign to misrepresent the nutritional attributes of its certain foods"). See also id. at ¶ 526 (alleging Defendant's "failures[,] from 1986 through 2002, to provide nutritional information at its store point-of-sale and drive through locations" to be "part of a deceptive practice to mislead New York State consumers and Plaintiffs").)

elevated levels of [LDL], and/or other detrimental and adverse health effects and/or diseases as medically determined to have been causally connected to the prolonged use of Defendant's certain products." (SAC ¶ 41; see also id. at ¶¶ 530-34.)[19] Plaintiffs concede that "[t]he exact number of putative class members . . . [is] not known" (id. at ¶ 538), arguing that "[t]he number and identities of the class members can only be ascertained through appropriate investigation and discovery" (id.), but estimating a class size numbering in the thousands. (Id.[20])[21]

_____

[19] Within the putative Class, Plaintiffs would define as "Heavy-Users" of Defendant's products those Class Members who consumed these products at least once a week "during a portion of the time period(s) that the schemes were alleged to have been perpetrated[]." (SAC ¶ 39.)  "Super Heavy-Users" within the Class are defined as those Class Members who consumed the products at least four times per week "during a portion of the time period(s) that the schemes were alleged to have been perpetrated[]." (SAC ¶ 40.)

[20] (See also Pls.' Mem. Law Supp. Cross-Mot. for Class Cert. & Opp'n to Def.'s Mot. to Strike Class Allegations & Deny Class Cert. ("Pls.' Mem. Supp. Class Cert.") 8-9 & n.4 (estimating "number of Class consumers denied access to nutritional production information at its New York State locations" without citation to individual declarations or other specific evidence, while noting that "Defendant's accounting for brochures provided to New York stores or consumers has still not been disclosed, to date"); 16 (estimating Class size in hundreds of thousands, without specific evidence of correlation between consumption of Defendant's products and development of medical or health conditions identical to those alleged by Plaintiffs); id. at n. 11 (relying on study that generally concludes that "[c]onsumption of fast food among children in the United States seems to have an adverse effect on dietary quality in ways that plausibly could increase risk for obesity" (citing Pls.' Cross-Mot. for Order Granting Class Cert. and Denying Def.'s Mot. to Strike Class

"In the event the Court finds individualized issues may predomina[te] as to causality of Class illness, including obesity and pediatric diabetes" (Pls.' Mem. Supp. Class Cert. 1), Plaintiffs ask that the court certify an issue class "for a determination of Defendant's liability for its deceptive conduct [] under [GBL § 349]." (See id.)

## STANDARD OF ANALYSIS

Federal Rule of Civil Procedure 23 governs the certification of federal class actions.[22]   "Rule 23(a) requires that a class

---

Allegations ("Pls.' Mot. for Class Cert.") Ex. [F] (Bowman et al., 113 Pediatrics 112 (2004)))); id. at 20-23 (same); id. at 24 (requesting additional discovery on issue of class certification).)

[21] By their motion for class certification, Plaintiffs "seek certification for three subsets of Classes on both liability and damages related to Defendant's (a) illusory offers to obtain nutritional brochure[s] at its stores[;] (b) false Chicken McNugget ingredient claims[;] and (c) engagement in a 'healthier-than-in-fact' nutritional scheme." (Pls.' Mem. Supp. Class Cert. 1.)  However, as explained above, the court considers the SAC to assert a single cause of action, based on Defendant's alleged practice of conveying to the consumer that its products may be consumed daily without incurring adverse health consequences, and failing to disclose information to the contrary.  Similarly, Plaintiffs' proposed Subclass (c) – based on Defendant's "engagement in a 'heathier-than-in-fact' nutritional scheme" (id.) – encompasses the allegations that Defendant failed to disclose material nutritional information in store brochures, and that Defendant made false ingredient claims with respect to its Chicken McNugget product.

[22] See, e.g., Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938))).

action possess four familiar features: (1) numerosity;
(2) commonality; (3) typicality; and (4) adequacy of
representation.  If those criteria are met, the district court
must next determine whether the class can be maintained under any
one of the three subdivisions of Rule 23(b)." McLaughlin v. Am.
Tobacco Co., 522 F.3d 215, 222 (2d Cir. 2008).[23]  With respect to
the requirements of Rule 23(b), Plaintiffs argue that their
proposed class or issue class can be maintained under 23(b)(3)
(Pls.' Mem. Supp. Class Cert. 7), which requires the court to
find that "the questions of law or fact common to class members
predominate over any questions affecting only individual members,
and that a class action is superior to other available methods
for fairly and efficiently adjudicating the controversy." Fed. R.

---

[23] A proposed class satisfies the numerosity requirement of
Rule 23(a) if the class "is so numerous that joinder of all
members is impracticable," Fed. R. Civ. P. 23(a)(1), which is
presumed to be the case at a level of at least 40 members.
Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483
(2d Cir. 1995) (citation omitted).  Plaintiffs need not precisely
limit the class size at the outset, see Robidoux v. Celani,
987 F.2d 931, 935 (2d Cir. 1993), "but the exact membership of
the class must be ascertainable at some point in the case," In re
Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,
209 F.R.D. 323, 337 (S.D.N.Y. 2002) (internal quotation marks and
citation omitted), and "there must be something within the record
from which it can be inferred that a class does exist." Clarkson
v. Coughlin, 783 F. Supp. 789, 798 (S.D.N.Y. 1992); see also
Robidoux, 987 F.2d at 935 ("[P]laintiffs must show some evidence
of or reasonably estimate the number of class members . . . ."
(internal quotation marks and citation omitted)).

Civ. P. 23(b)(3).[24]

For purposes of this motion for class certification, the court considers the allegations in Plaintiffs' SAC as true. See Shelter Realty Corp. v. Allied Maint. Corp., 574 F.2d 656, 661 n.15 (2d Cir. 1978).  However, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (internal quotation marks and citation omitted).

## DISCUSSION

The court begins and ends its analysis of class certification with consideration of the predominance requirement of Rule 23(b)(3).  Because, as explained below, Plaintiffs have failed to satisfy this element for certification, the court need not examine each remaining element individually.[25]

---

[24] Rule 23(b)(3) also provides that "[t]he matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Id.

[25] See, e.g., In re Canon Cameras Litig., 237 F.R.D. 357, 359 (S.D.N.Y. 2006) ("Here, while the Court harbors doubts that plaintiffs have satisfied all the requirements of Rule 23(a), it need not reach that question because it is plain that they do not begin to satisfy the requirements of Rule 23(b)." (footnote omitted)); In re Rezulin Prods. Liab. Litig., 210 F.R.D. 61, 66,

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods, Inc. v. Windsor, 521 U.S. 591, 623 (1997) (citation and footnote omitted).  To satisfy this requirement, Plaintiffs must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation and alteration marks and citation omitted), abrogated in part on other grounds, In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 42 (2d Cir. 2006).

The court must therefore consider the elements of Plaintiffs' cause of action under GBL § 349, and determine whether they may be established by common, class-wide proof. See In re Currency Conversion Fee Antitrust Litig., 230 F.R.D. 303, 310 (S.D.N.Y. 2004) (quoting In re Linerboard Antitrust Litig., 305 F.3d 145, 156 (3d Cir. 2002) ("Clearly, if proof of the essential elements of the cause of action require[s] individual treatment, then there cannot be a predominance of questions of

---

71 (S.D.N.Y. 2002) ("In this case, the Court assumes without deciding that the requirements of Rule 23(a) are satisfied.  It nevertheless is clear that the case is inappropriate for certification [because the predominance requirement of Rule 23(b)(3) is not satisfied].").

law and fact common to the members of the class." (internal
quotation marks omitted))) (additional citations omitted).  A
plaintiff's failure to establish that "common proof regarding the
elements of the asserted claims would predominate," id., is
sufficient to warrant a denial of the motion for class
certification. See id.

        To prevail on the elements of their cause of action under
GBL § 349, Plaintiffs must prove that Defendant "[1] made
misrepresentations or omissions that were likely to mislead a
reasonable consumer in the plaintiff's circumstances, [2] that
the plaintiff was deceived by those misrepresentations or
omissions and [3] that as a result the plaintiff suffered
injury." Solomon v. Bell Atl. Corp., 777 N.Y.S.2d 50, 55 (N.Y.
App. Div. 2004) (citation omitted).  As explained below, the
court concludes that individualized inquiries are necessary to
determine whether each plaintiff suffered injury as a result of
being deceived by Defendant's allegedly misleading
representations.  Accordingly, the court decides that the cause
of action fails to satisfy the predominance requirement of Rule
23(b)(3).  Further, although the cause of action does present
discrete issues which otherwise satisfy the criteria for Issue
Class certification pursuant to Rule 23(c)(4), the court
concludes that, because Plaintiffs have failed to present
specific evidence of a sufficiently numerous class of individuals

who were both exposed to Defendant's allegedly deceptive
marketing scheme *and* have subsequently suffered from the same
adverse medical conditions as those alleged by Plaintiffs to have
been the result of their exposure, Plaintiffs have also not met
their burden for Issue Class certifiability at this time.   The
court will explain, in turn, each of these conclusions.

> A.    The Cause of Action Fails to Meet Rule 23(b)(3)'s
>       Predominance Requirement.

To succeed on their GBL § 349 claim, Plaintiffs' and
putative Class members' alleged injuries must have been suffered
"by reason of" Defendant's alleged deceptive business practices.
N.Y. Gen. Bus. L. § 349.   "[W]ile the statute does not require
proof of justifiable reliance, a plaintiff seeking compensatory
damages must show that the defendant engaged in a material
deceptive act or practice that *caused* actual, although not
necessarily pecuniary, harm." Oswego Laborers' Local 214 Pension
Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741 (N.Y. 1995)
(emphasis added).

Plaintiffs claim to have suffered three types of harm or
injuries "by reason of" Defendant's allegedly deceptive
nutritional marketing scheme – the financial costs of Defendant's
products; "false beliefs and understandings as to the nutritional
contents and effects of Defendant's food products"; and "obesity,
elevated levels of [LDL], significant or substantial increased
factors in the development of coronary heart disease, pediatric

22

diabetes, high blood pressure and/or other detrimental and adverse health effects and/or diseases as medically determined to have been causally connected to the prolonged use of Defendant's products."[26]  However, allegations of "false beliefs and understandings" do not state a claim for "actual injury" under GBL § 349, <u>Small v. Lorillard Tobacco Co.</u>, 679 N.Y.S.2d 593, 599 (N.Y. App. Div. 1998) ("Neither the case law nor the statutory language [of GBL § 349] supports [the] argument that the deception *is* the injury." (emphasis in original)), <u>aff'd</u>, 720 N.E.2d 892 (N.Y. 1999); and neither do allegations of pecuniary loss for the purchase of Defendant's products. <u>Small</u>, 720 N.E.2d at 898 ("[Plaintiffs] posit that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under [GBL] § 349.  We disagree.").  Accordingly, the only alleged injuries for which Plaintiffs and putative Class members may claim damages under GBL § 349 are those related to the development of certain medical conditions, as alleged in the SAC.

All proposed experts who have given their opinion in this case regarding the possibility of a causal link between the consumption of Defendant's products and the development of these medical conditions essentially agree that the presence of such

---

[26] (SAC ¶¶ 556-58, 562-64, 568-70, 574-76, 580-82, 586-88, 592-94, 598-600, 615-17, 621-23, 627-29, 633-35, 639-41, 645-47, 651-53, 657-59; <u>see</u> <u>id.</u> at ¶¶ 674, 676.)

causal connection, if any, depends heavily on a range of factors unique to each individual. As Dr. Raman, Defendant's proposed nutritional expert, concludes, "[b]ecause there are so many factors that contribute to obesity and to obesity related illnesses, it is improper to generalize and make assumptions as to causation in any individual." (Def.'s Mot. to Strike Class Allegations & Deny Class Cert. ("Def.'s Mot. to Strike"), Aff. of Rita P. Raman ("Raman Aff.") ¶ 6.) See, e.g., In re Rezulin, 210 F.R.D. at 66 ("[T]he issue of whether [ingestion of Defendant's product due to Defendant's failure to warn of risks] caused physical injury to a specific class member will depend on his or her unique characteristics[,] such as[,] [inter alia,] family and medical background, preexisting medical conditions, age, gender, life style, drug or alcohol use, quantity of [product] ingested, [etc.].") As explained below, none of the testimony Plaintiffs present in support of their motion for class certification can reasonably be construed to present any evidence to the contrary.

Plaintiffs' own proposed nutritional expert, Dr. Barnard, attests to the lack of certainty with regard to a generalized causal connection between consumption of Defendant's products and the medical injuries Plaintiffs identify,[27] leaving aside for the

---

[27] (See Pls.' Mot. for Class Cert. Ex. B ("Barnard Aff.") 3 ("[C]onsumption by individuals beyond two to three times per week of typical McDonald's products . . . *can be* medically,

moment the question of a generalized causal connection between
such injuries and exposure to Defendant's nutritional marketing
scheme.  Dr. Barnard asserts that a general causal link between
consumption of Defendant's products and the development of
certain medical conditions can be determined because Defendant's
products are high in fat, salt, and cholesterol, low in fiber and
certain vitamins, and contain beef and cheese. (Barnard Aff. 2-
3.)  However, because many foods are high in fat, salt, and
cholesterol, low in fiber and certain vitamins, and contain beef
and cheese, and because there is no evidence to suggest that all
who consume such foods develop the kinds of medical conditions
which are at issue in this case, the central proposition upon
which Dr. Barnard's argument is based necessarily admits the
conclusion that, in the absence of individualized inquiries
regarding various other factors, no necessary generalizable
causal connection is manifest between the consumption of
Defendant's products and the development of certain medical

---

scientifically isolated and identified to be a significant and
*contributing* cause to an individual's development of obesity,
diabetes, and their related illnesses." (emphasis added)); <u>see
also</u> <u>id.</u> at 2-3 (relying exclusively on the presumption that
Defendant's products are "high in fat, salt, and cholesterol, and
low in fiber and certain vitamins"; a study concluding the fat
content of a typical McDonald's meal to be approximately 43
percent, compared with the 37 percent average fat intake of U.S.
consumers; and a study concluding that regular consumption of
products "*such as* those sold at McDonald's" may lead to "a
greater [] increase in insulin resistance, the *primary*
abnormality leading to type 2 diabetes" (emphasis added)).)

conditions.[28]

Dr. Frieden, whose declaration in a prior action[29] is also submitted in support of Plaintiffs' motion for class certification (Pls.' Mot. for Class Cert. Ex. C ("Frieden Decl.")), similarly presents no evidence establishing a direct and necessary causal connection, obviating the need for individualized inquiries, between the consumption of Defendant's products and the development of the sort of medical conditions allegedly suffered by Plaintiffs. (See, e.g., id. at ¶ 9 ("People who are overweight are at *increased risk* for diabetes, heart disease, stroke, high blood pressure, arthritis, and cancer." (emphasis added)).[30]) Because, as Dr. Frieden points out,

---

[28] In addition, even were there sufficient evidence to conclude that consumption of products high in fat, cholesterol, and salt, and/or containing beef and cheese, entails a generalizable causal link to the development of the medical illnesses allegedly suffered by Plaintiffs, given the widespread availability of such products from many different sources, individualized questions would predominate regarding the extent to which, in each particular Plaintiff's case, it was consumption of *Defendant's* products, and not the myriad other food products on the market high in fat, cholesterol, and salt, and containing beef and cheese, which initiated the causal reaction.

[29] N.Y. State Restaurant Ass'n v. N.Y. City Bd. of Health, 509 F. Supp. 2d 351 (S.D.N.Y. 2007).

[30] (See also id. at ¶¶ 6 ("Heart disease, stroke, cancer and diabetes . . . are all conditions which are significantly *more prevalent* among persons who are obese." (emphasis added, citation omitted)), 9 ("According to the Surgeon General of the United States: 'For the *vast majority* of individuals, overweight and obesity result from excess calorie consumption *and/or* inadequate physical activity.'" (emphasis added) (quoting U.S. Dep't of Health and Human Servs., Office of Surgeon General, Call to

"increasing weight results from an imbalance between calories consumed (nutrition) and energy expended (physical activity)" (Frieden Aff. ¶ 14), individualized inquiries predominate in this case regarding the extent of each plaintiff's consumption and energy expenditure.

The court therefore concludes that, because factual questions with regard to, at the very least, the nutritional composition of food products consumed by each plaintiff from sources other than Defendant's facilities, as well as the level of regular physical activity engaged in by each plaintiff, predominate in the inquiry with respect to an essential element of Plaintiffs' cause of action, this case is not appropriate for adjudication on a class-wide basis.[31] See, e.g., Yeger v. E*Trade

_____

Action to Prevent and Decrease Overweight and Obesity (2001))), 10 ("People who are overweight or obese are at *increased risk* for [certain medical conditions]." (emphasis added)), 14 ("[I]ncreasing weight results from an imbalance between calories consumed (nutrition) and energy expended (physical activity) . . . .").)

[31] Compare, e.g., Morrissey v. Nextel Partners, Inc., 895 N.Y.S.2d 580, 587 (N.Y. App. Div. 2010) (reversing lower court's denial of motion for class certification of GBL § 349 claim where claim was based on identical communication from the defendant to all putative class members regarding a fee increase, whose small typeface and inconspicuous location within a billing statement was allegedly materially misleading, because "the particular damages suffered by each class member can be easily computed" as the increase in fee which was allegedly assessed without adequate notice) (generalizable causal link – if the notice of fee increase was misleading, then the damage of incurring the additional fee, which can be easily shown, follows as a matter of course); In re Coordinated Title Ins. Cases, 784 N.Y.S.2d 919 (N.Y. Sup. Ct. 2004) (Table) (holding that

<u>Sec. LLC</u>, 884 N.Y.S.2d 21, 24 (N.Y. App. Div. 2009) (decertifying class, despite a common question as to the wrongfulness of the defendant's conduct, because "this is only half the question," and whether the defendant's conduct "caused an individual class member to suffer actual damages depends upon facts so individualized that it is impossible to prove them on a class-wide basis").

Moreover, Defendant is correct that whether or not Plaintiffs' claims – that they ate McDonald's food because they believed it to be healthier than it was in fact – are true for any particular person is an inquiry which also requires individualized proof. (McDonald's Mem. of Law in Supp. Mot. to Strike Class Allegations & Deny Class Cert. ("Def.'s Mem. in Opp'n Class Cert.") 13.) <u>See, e.g.</u>, <u>Newman v. RCN Telecom Servs., Inc.</u>, 238 F.R.D. 57, 63 (S.D.N.Y. 2006) ("To sustain a claim under GBL § 349, [] the alleged deceptive act must be the cause of the harm asserted."); <u>Whalen v. Pfizer, Inc.</u>, 862 N.Y.S.2d 812 (N.Y. Sup. Ct. 2005) (Table) ("[T]o satisfy the commonality requirement in a class action alleging deceptive acts and

---

common questions predominate where "[t]he question raised in the complaint involves the conduct of the defendants in allegedly overcharging or failing to notify the members of the putative class of the availability of the mandated discounts") (generalizable causal link – if it can be shown that this failure was materially misleading, and that the class members did not receive their discount, it is easily inferred that the reason the class members lost the benefit of the discount is because they were not informed of it).

practices [under GBL § 349] . . ., the proof must show that *each* plaintiff was reasonably deceived by the defendant's misrepresentations and was injured by reason thereof." (emphasis in original)).

As Defendant points out, "[a] person's choice to eat at McDonald's and what foods (and how much) he eats may depend on taste, past experience, habit, convenience, location, peer choices, other non-nutritional advertising, and cost" (Def.'s Mem. in Opp'n Class Cert. 13 (citing Def.'s Mot. to Strike, Aff. Timothy P. Meyer ("Meyer Aff.") ¶¶ 2, 4-9, 18), and although "[b]eliefs about nutrition may influence a person's decision in some cases, [it will] not always [be the case]." (Id. (citing Meyer Aff. ¶ 26).)

Thus, in addition to individualized inquiries regarding the causal connection between the consumption of products of a certain nutritional make-up and the development of certain physical or medical conditions in particular plaintiffs, and in addition to individualized inquiries regarding the extent to which Defendant's establishments were the primary source of these types of products for each particular plaintiff, individualized inquiries will also predominate regarding the causal connection between each plaintiff's exposure to the allegedly misleading aspects of Defendant's advertising scheme and each Plaintiff's subsequent consumption of Defendant's allegedly injurious

products. <u>See, e.g.</u>, <u>Naftulin v. Sprint Corp.</u>, 847 N.Y.S.2d 903
(N.Y. Sup. Ct. 2007) (Table) ("[T]he inducement to purchase
defendants' services [or products] cannot be inferred and is
unique to each class member." (citing <u>Hazelhurst v. Brita Prods.
Co.</u>, 744 N.Y.S.2d 31, 33 (N.Y. App. Div. 2002)); <u>Solomon</u>,
777 N.Y.S.2d at 54 ("Even assuming that all the members of the
class saw the same advertisements, questions as to whether each
individual was reasonably misled by them predominate, given the
alternative sources of information about [Defendant's product]
that each may have had.").[32]

Accordingly, the court concludes that, "[w]hile some common
questions concerning [Defendant's nutritional marketing scheme]
exist, individual questions about causation would overwhelm
them[,] [and therefore] Plaintiff[s'] Section 349 claim is not
appropriate for class certification." <u>In re Currency Conversion</u>,
230 F.R.D. at 311.

---

[32] <u>See also</u> <u>Carnegie v. H & R Block, Inc.</u>, 703 N.Y.S.2d 27,
29 (N.Y. App. Div. 2000) (decertifying class in GBL § 349 action
because "questions of whether each individual was exposed to, and
influenced by, the advertising would predominate"); <u>Tegnazian v.
Consol. Edison, Inc.</u>, 730 N.Y.S.2d 183, 187 (N.Y. Sup. Ct. 2000)
(declining to certify class in GBL § 349 action because the case
"would require individualized inquiry to ascertain which, if any,
of the putative class members were misled by [the defendant]'s
advertising, and whether it resulted in any damage[,] [which]
inquiry would predominate over any common questions") (citing
<u>Carnegie</u>, 703 N.Y.S.2d 27).

B.   Class Certification for the Litigation of Certain
     Issues Pursuant to Rule 23(c)(4) Is Also Not
     Appropriate.

Having concluded that Plaintiffs' proposed Class fails to
meet the predominance requirement for certification under Rule
23(b)(3), the court will now consider Plaintiffs' request to
certify an Issue Class "for a determination of Defendant's
liability for its deceptive conduct on consumers under [GBL]
§ 349." (Pls.' Mem. Supp. Class Cert. 1.)

"When appropriate, an action may be brought or maintained as
a class action with respect to particular issues." Fed. R. Civ.
P. 23(c)(4).  Further, "a court may employ Rule 23(c)(4)[] to
certify a class on a particular issue even if the action as a
whole does not satisfy Rule 23(b)(3)'s predominance requirement."
In re Nassau Cnty. Strip Search Cases, 461 F.3d 219, 225 (2d Cir.
2006).[33]  "District courts should take full advantage of this
provision to certify separate issues in order to reduce the range
of disputed issues in complex litigation and achieve judicial

_____

[33] See also Cordes & Co. Fin. Servs, Inc. v. A.G. Edwards &
Sons, Inc., 502 F.3d 91, 109 (2d Cir. 2007) ("[The Second
Circuit] adopted [] the Ninth Circuit's view that Rule 23(c)(4)[]
is available to certify particular issues 'regardless of whether
the claim as a whole satisfies Rule 23(b)(3)'s predominance
requirement.'" (quoting Nassau Cnty., 461 F.3d at 227) (citing
Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir.
1996) ("Even if the common questions do not predominate over the
individual questions so that class certification of the entire
action is warranted, Rule 23 authorizes the district court in
appropriate cases to isolate the common issues under Rule
23(c)(4)[] and proceed with class treatment of these particular
issues.")))

efficiencies." <u>Robinson v. Metro-North Commuter R.R.</u>, 267 F.3d 147, 167-68 (2d Cir. 2001) (internal alteration and quotation marks and citations omitted) (holding issue-class certification to be appropriate where "litigating the pattern-or-practice liability phase for the class as a whole would both reduce the range of issues in dispute and promote judicial economy").

"Issue certification is especially appropriate . . . where Defendants' liability can be determined once, on a class-wide basis, through common evidence." <u>Charron</u>, __ F.R.D. at __, 2010 WL 1752501, at *23 (citation omitted).  Moreover, where the initial elements of liability may be established on the basis of common evidence, issue certification may be an appropriate method for advancing the litigation even where the prevalence of individual inquiries regarding the element of causation precludes class certification for the action as a whole. <u>Collins v. Olin Corp.</u>, 248 F.R.D. 95, 104 (D. Conn. 2008) ("[I]ndividual issues of causation do not preclude class certification.  . . . [A]lthough the element of causation may require more individualized proof, the proof as to the other elements of [the cause of action] will be class-wide." (citing <u>Bates v. Tenco Servs., Inc.</u>, 132 F.R.D. 160, 163-64 (D.S.C. 1990) ("Individual offers of proof of proximate cause and damages for each plaintiff will become an inevitable necessity; however, these individual questions of proof will arise whether the suit proceeds

32

individually or as a class action.")) (footnote and additional
citations omitted)).

   "For particular issues to be certified pursuant to Rule
23(c)(4), the requirements of Rules 23(a) and (b) must be
satisfied only with respect to those issues." <u>Charron</u>, __ F.R.D.
at __, 2010 WL 1752501, at *19 (citing 5 Moore's Fed. Prac.
§ 23.86[2]).

   As mentioned, there are three elements to Plaintiffs' cause
of action under GBL § 349: "first, that the challenged act or
practice was consumer-oriented; second, that it was misleading in
a material way; and third, that the plaintiff suffered injury as
a result of the deceptive act." <u>Stutman</u>, 731 N.E.2d at 611
(citations omitted).  As explained above, Plaintiffs essentially
challenge two aspects of Defendant's advertising scheme during
the years between 1985 and 2002 – the affirmative representation
of Defendant's products as allegedly healthier than in fact, and
the omission of material information regarding the actual
nutritional composition of Defendant's products[34] – claiming that
the medium of both the representation and the omission was
consumer-oriented and misleading in a material way, and that

---

   [34] As explained above, the court considers Counts II and III
of the SAC to be part of the same claim – the claim that
Defendant unlawfully omitted to reveal certain material aspects
of the nutritional composition of its products, whether through
omissions in its advertising (Count II) or the refusal to provide
nutritional pamphlets to consumers (Count III).

Plaintiffs and putative class members were injured as a result of these deceptive acts. (SAC ¶¶ 548-681.)

While the court has concluded that proof of the element of injury as a result of the allegedly deceptive acts would require a level of individualized inquiry that precludes the class-wide litigation of the action as a whole, questions of the consumer-orientation and material deceptiveness of Defendant's acts and omissions are evaluated on the basis of objective standards, and are therefore subject to proof based on evidence common to the class of individual plaintiffs who claim or may claim exposure to and injury from these acts and omissions. See Teller v. Bill Hayes, Ltd., 630 N.Y.S.2d 769, 772-73 (N.Y. App. Div. 1995) (noting that the  element of consumer-orientation in GBL § 349 "require[s] a showing of potential impact on consumers at large"); Stutman, 731 N.E.2d at 611-12 ("Whether a representation or an omission, the deceptive practice [under GBL § 349] must be likely to mislead a reasonable consumer acting reasonably under the circumstances." (citation omitted)).

In their SAC, Plaintiffs list a number of specific advertisements which they allege to comprise the nutritional scheme that is the subject of this litigation.[35]  Plaintiffs

---

[35] Specifically, Plaintiffs list the following distinct representations allegedly made by Defendant: 1) that "only delicious chunks of juicy breast and thigh meat go into Chicken McNuggets" (SAC ¶¶ 118-30); 2) that Defendant's Chicken McNuggets were made with "100 percent chicken" (id. at ¶¶ 131-43); 3) that

_____

Defendant's Chicken McNuggets were made from only whole cuts of
breast and minced thigh meat (id. at ¶¶ 144-53); 4) "that an
average of 109 mg of sodium, less than half a cookbook pinch of
salt[,] was placed in [Defendant's] French Fries product" (id. at
¶¶ 154-79); 5) that "sodium [was] down across [Defendant's] menu
[of products]" (id. at ¶¶ 180-92); 6) that Defendant's food
products consisted of "[m]eat and potatoes[,] [m]ilk and bread[,]
100% pure American beef at least 77.5% lean[,] [r]eal milk in
every dairy product[,] wholesome bread from local bakeries[,]
[g]ood, basic, nutritious food" (id. at ¶¶ 193-206; see also id.
at ¶ 427 (discussing representation that "[m]ost of [Defendant's]
menu is made from a few basic natural ingredients – meat, fish,
eggs, grain and potatoes")); 7) that Defendant's products consist
of "[f]ood that's been the foundation of well balanced diets for
generations[] [a]nd will be for generations to come" (id. at
¶¶ 207-20); 8) that Defendant shops where consumers shop, buys
brands trusted by consumers, and prepares its products "with the
same care as [consumers] do at home" (id. at ¶¶ 221-36; see also
id. at ¶¶ 250-63 (discussing additional advertisements
representing that Defendant "cook[s] the way [consumers] do" and
shares consumers' goals of serving tasty and nutritious meals));
9) that Defendant's products can "fit comfortably into [the
consumer's] well-balanced diet" (id. at ¶¶ 237-49; see also id.
at ¶¶ 268 (additional representation that Defendant "enrich[ed]
[its] hamburger buns with niacin, iron, thiamine, and
riboflavin"); 310 (additional representation that Defendant's
products "measure[] up to" guidelines for a healthful diet
established by the U.S. Department of Agriculture and Health and
Human Services, by "serv[ing] many variations within the basic
food groups[,] . . . avoid[ing] too much fat, saturated fat and
cholesterol[,] . . . [providing] foods with adequate starch and
fiber[,] [and] avoid[ing] too much sugar and soda"); 467-80
(additional representations that Defendant's products can be
"consumed three times per day, for breakfast, lunch and dinner,
and be considered part of a healthy diet for all consumers");
496-505 (additional representations that Defendant's Happy Meal
product provides "an 'excellent' or 'good' source of nine or more
nutrients, [according to Food and Drug Administration labeling
guidelines]")); 10) that, "at McDonald's[,] it's easy to get
calcium in almost every meal" (id. at ¶¶ 264-67 (see also id. at
¶¶ 280-90 (additional representation of calcium content in
Defendant's hamburger buns and English Muffins)); 11) that
Defendant cooks its Chicken McNuggets, Filet-O-Fish, and pies
with only "100% cholesterol-free vegetable shortening" (id. at
¶¶ 269, 274; see also id. at ¶¶ 331; 356 (same)); 12) that
Defendant's milk shakes contain no artificial preservatives and

contend that "the cumulative effect" of these representations was
to constitute a marketing scheme that misleadingly "convey[ed],
to the reasonable consumer, including Plaintiffs and putative
Class members, that Defendant's foods are nutritious, healthy,
and can be consumed easily every day without incurring any
detrimental health effects[] . . . ." (SAC ¶ 508.)  As the court
held in Pelman IV, an extensive marketing scheme is actionable
under GBL § 349, such that "[P]laintiffs need not confirm that
each plaintiff saw or heard each advertisement." 396 F. Supp. 2d

---

include 22 percent of a person's recommended daily allowance for
protein, 32 percent of the allowance for calcium, and 26 percent
of the allowance for riboflavin (id. at ¶¶ 292-305); 13) that
Defendant's products are made with "beef that's leaner than the
kind of beef most people buy in the supermarket" (id. at ¶¶ 306-
25; see also id. at ¶¶ 328-29; 345 (same)); 14) that Defendant
does not add additives, fillers, or extenders to its beef
products, and that its beef products are comprised of "[s]elected
cuts including sirloin, chuck and round steak" (id. at ¶ 330; see
also id. at ¶¶ 345, 428 (additional representations regarding
lack of additives in Defendant's beef products)); 15) that
Defendant's French Fries are cooked in 100 percent vegetable oil
(id. at ¶¶ 368, 373, 376-81); 16) that Defendant's McLean Deluxe
was 91 percent fat-free (id. at ¶¶ 415-24); 17) that daily
consumption of meat products "can make it easier to do things
like climb higher and ride [a] bike farther" (id. at ¶¶ 440-49);
18) that Defendant's Fish Filet was made with "'100% cod' [and]
with only a pinch of salt added to taste after cooking" (id. at
¶¶ 450-66).

      As noted above, Plaintiffs' allegations regarding
Defendant's Mighty Kids Meal product (SAC ¶¶ 481-95), as well as
the allegations regarding Defendant's representations that its
French Fries are "cholesterol-free" (SAC ¶ 369), have been
stricken. See supra note 9.  In addition, Plaintiffs' allegations
regarding "other consumer-oriented statements, advertisements,
and press releases" have similarly been stricken, with leave to
seek amendment of the SAC to add allegations regarding any
additional representations for good cause shown. Id.

at 446.[36]

The 1) existence; 2) consumer-orientation; and 3) materially misleading nature of the marketing scheme alleged by Plaintiffs as the basis of their cause of action against Defendant are each questions which can be settled upon a showing of objective evidence and legal argument.  Such evidence and argumentation are commonly applicable to the entire class of existing and potential plaintiffs who claim to have been exposed to and injured by this marketing scheme.

Because these issues "are precisely the common questions of law and fact," Charron, __ F.R.D. at __, 2010 WL 1752501, at *21, and because "when a Court chooses to limit class certification only to certain common issues . . ., those issues necessarily predominate [in the resulting class action],"[37] the commonality

_____

[36] See also id. at 445 ("[A] general allegation of deception states a claim under GBL § 349." (citing Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris Inc., 178 F. Supp. 2d 198 (E.D.N.Y. 2001), rev'd on other grounds sub nom., Empire Healthchoice, Inc. v. Philip Morris USA, Inc., 383 F.3d 312 (2d Cir. 2004); Gaidon v. Guardian Life Ins. Co. of Am., 725 N.E.2d 598 (N.Y. 1999))). See Blue Cross, 178 F. Supp. 2d at 210 ("[P]laintiff adduced sufficient evidence for a jury to find that defendants engaged in a successful scheme to distort the body of public knowledge . . . ."); id. at 271 ("Proof that each individual subscriber was personally addressed by the defendant was not necessary.  The evidence was sufficient to support the conclusion that this fraud caused damage to plaintiff recoverable under section 349."); Gaidon, 725 N.E.2d at 603 (holding "extensive marketing scheme" actionable under GBL § 349).

[37] Id. (citing 2 Newberg on Class Actions § 4:23 ("When a court decides to limit a class action with respect to particular

and typicality requirements of Rule 23(a), as well as the
predominance requirement of Rule 23(b)(3), are met, with respect
to these issues, for the set of individuals in Plaintiffs'
position.  Persons who are in Plaintiffs' position are those
persons who had not yet reached the age of twenty-one as of
August 2002,[38] who were exposed to McDonald's nutritional

---

common issues only, such limitation will necessarily afford
predominance as to those issues." (citations omitted)) (internal
quotation marks and additional citation omitted)). See also supra
note 33.

 The court notes that there is a circuit split with respect
to this issue between the Ninth and Second Circuits, on the one
hand, and the Fifth Circuit, on the other. Compare In re Nassau,
461 F.3d at 227; Valentino, 97 F.3d at 1234, with Castano v. Am.
Tobacco Co., 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("A district
court cannot manufacture predominance through the nimble use of
subdivision (c)(4).  The proper interpretation of the interaction
between subdivisions (b)(3) and (c)(4) is that a cause of action,
as a whole, must satisfy the predominance requirement of (b)(3)
and that (c)(4) is a housekeeping rule that allows courts to
sever the common issues for a class trial.  Reading rule 23(c)(4)
as allowing a court to sever issues until the remaining common
issue predominates over the remaining individual issues would
eviscerate the predominance requirement of rule 23(b)(3); the
result would be automatic certification in every case where there
is a common issue, a result that could not have been intended.").

 [38] As discussed above, see supra notes 5 and 9, the
applicable three-year statute of limitation bars the claims of
all Plaintiffs except those who had not yet reached the age of
majority prior to the three years before filing of this law suit,
for whom the statute is tolled until majority is reached.
Majority is reached at eighteen years.  Therefore, potential
plaintiffs have until they are twenty-one years old to bring this
claim.  Because this action was brought in August 2002, the
statute of limitations had run for anyone over the age of twenty-
one at that time, but not yet for those individuals who had not
yet reached that age, who have three years after the statute
started running for them at age eighteen.  Accordingly, limiting
the putative Issue Class in this regard would ensure that the
typicality requirement of Rule 23(a) is met.

marketing scheme in New York during the years from 1985 until
2002, who ate regularly at McDonald's, and who subsequently
developed the same medical conditions as Plaintiffs. See id.[39]
Further, because the representative Plaintiffs would not possess
any substantial interests that are antagonistic to such putative
Issue Class members, and because resolving the issues common to
this putative class of plaintiffs, on the basis of common
evidence in one set of class-wide determinations, is clearly a
more efficient use of judicial resources than litigating exactly
the same issues, on precisely the same set of facts, with respect
to each individual plaintiff,[40] the adequacy of representation
requirement of Rule 23(a) and the superiority requirement of Rule
23(b)(3) may also arguably be met.[41]

---

[39] Cf. Simon v. Philip Morris, Inc., 200 F.R.D. 21, 29
(E.D.N.Y. 2001) ("Rule 23(c)(4)[] accords district judges the
discretion to certify a class action as to particular issues in a
manner that treat[s] common things in common and distinguishes
the distinguishable, thereby satisfying Rule 23(a)'s requirements
of commonality and typicality." (internal quotation and
alteration marks and citation omitted)).

[40] See, e.g., Robinson, 267 F.3d at 168 ("[L]itigating the
pattern-or-practice liability phase for the class as a whole
would both reduce the range of issues in dispute and promote
judicial economy."); Charron, __ F.R.D. at __, 2010 WL 1752501,
at *22 ("Forcing individual Class members to separately and
repeatedly litigate the liability questions common to their []
claims would be highly inefficient").

[41] Rule 23(a)'s adequacy of representation requirement also
necessitates a finding that "'[Plaintiffs'] attorneys are
qualified, experienced and able to conduct the litigation.'" In
re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35
(2d Cir. 2009) (quoting Baffa v. Donaldson, Lufkin & Jenrette

With respect to the numerosity requirement of Rule 23(a), however, although Plaintiffs argue that "[New York State] product sales records, frequency and customer-product-use surveys can reveal hundreds of thousands [of] consumers within the ambit of the class" (Pls.' Mem. Supp. Class Cert. 16 n.10 (citation omitted)), Plaintiffs have not presented the court with any specific evidence that there are any other persons who had not yet reached the age of twenty-one as of August 2002, were exposed

---

Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)). "On a motion for class certification, the moving party bears the burden of proving that all the requirements of Rule 23 are met." McNeill v. N.Y. City Housing Auth., 719 F. Supp. 233, 252 (S.D.N.Y. 1989) (citing In re Gulf Oil/Cities Serv. Tender Offer Litig., 112 F.R.D. 383 (S.D.N.Y. 1986)).  Plaintiffs have submitted no information to allow the court to make this requisite finding at this time. Compare, e.g., Poddar v. State Bank of India, 235 F.R.D. 592, 596 (S.D.N.Y. 2006) ("The class attorneys' qualifications and experience are [] evidenced by the affidavit they submitted in support of plaintiffs' motion."); Andre H. by Lula H. v. Ambach, 104 F.R.D. 606, 612 (S.D.N.Y. 1985) ("The named plaintiff is represented by the Legal Aid Society.  Plaintiff sets forth a number of class actions in which Legal Aid has been involved. The list of cases speaks for itself and certainly supports a finding that the plaintiff can adequately represent the class.").
    Further, Rule 23(b)(3) provides that one of the considerations pertinent to the superiority inquiry is that of "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D).  One management difficulty of a class action is "the burden of complying with rule 23's notice requirements." In re Vivendi Universal, S.A., 242 F.R.D. 76, 107 (S.D.N.Y. 2007) (citing 7AA Wright, Miller, & Kane, Fed. Prac. & Proc. § 1780, at 187-90).  Plaintiffs have also failed to submit any information on the basis of which the court could conclude that all members of the putative issue class will be adequately and manageably notified of this action and their right to seek exclusion. Compare id. at 108 ("[P]laintiffs have filed a comprehensive affidavit outlining the effectiveness of [their] proposed method of providing notice [to all putative class members].").

to McDonald's nutritional marketing scheme in New York during the years from 1985 until 2002, ate regularly at McDonald's, *and subsequently developed the same medical conditions as Plaintiffs*. (See generally Pls.' Mot. for Class Cert.; Pls.' Mem. Supp. Class Cert.[42]) See, e.g., Amchem Prods., 521 U.S. at 594-95 ("Representatives must be part of the class and possess the same interest *and suffer the same injury as the class members*." (emphasis added, citation omitted)).

While Plaintiffs are correct that "reasonable inferences can [] be drawn from available facts to find numerosity" (Pls.' Mem. Supp. Class Cert. 16 n.1 (citing McNeill, 719 F. Supp. 233)), there must nevertheless be "something within the record from which it can be inferred that a class does exist." Clarkson, 783 F. Supp. at 798. Lack of knowledge as to exact class size has been held excusable in cases where "defendants alone have access to such data," id. (noting that "classes [have been] certified where the exact number of class members could not be determined by the plaintiffs because the pertinent information

---

[42] (See, e.g., Pls.' Mem. Supp. Class Cert. 21 (citing studies tending to show that consumption of products from fast food restaurants increases the risk of obesity, but providing no evidence of the existence of young persons who specifically developed "obesity, elevated levels of [LDL], significant or substantial increased factors in the development of coronary heart disease, pediatric diabetes, [and/or] high blood pressure" (SAC ¶¶ 558, 564, 570, 576, 582, 588, 594, 600, 617, 623, 629, 635, 641, 647, 653, 659), after regular consumption of *Defendant's* food products during the relevant time period).)

was within the defendants' control"), but that is not the case
here. Compare, e.g., Folsom v. Blum, 87 F.R.D. 443, 445 (S.D.N.Y.
1980) ("The exact number of affected persons is known to the
defendants who have the means to identify them at will.").

Because Plaintiffs have not yet established that there are
any other persons within the relevant age group who were exposed
to the nutritional marketing at issue, then regularly ate at
McDonald's, and subsequently developed the same medical injuries
as those allegedly suffered by Plaintiffs, and because Plaintiffs
have not submitted sufficient evidence from which these facts may
be reasonably inferred, the court cannot conclude that the
putative class of persons with claims identical to those of
Plaintiffs' in this case "is so numerous that joinder of all
members is impracticable." Fed. R. Civ. P. 23(a). See, e.g.,
Clarkson, 783 F. Supp. at 798.  Accordingly, Plaintiffs have
failed to meet their burden of proving that the putative Issue
Class satisfies all requirements of Rule 23, and the motion for
certification of an Issue Class in this case must therefore also
be denied.[43]

---

[43] The court notes Plaintiffs' request for additional class
discovery (Pls.' Mem. Supp. Class Cert. 24), as well as
Defendant's argument that Plaintiffs are precluded by Judge
Stein's ruling at the February 24, 2009 Pretrial Conference, see
supra note 10, from seeking further class discovery. (Letter from
Def. to Court (Mar. 31, 2010).)  The court concludes that Judge
Stein's order – that, because Plaintiffs had fully briefed their
motion for class certification before bringing a motion to compel
discovery, no further discovery with regard to class

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs' motion for class certification and, in the alternative, for issue class certification, is DENIED in its entirety.  The parties shall consult and submit a revised scheduling order by November 29, 2010.

It is SO ORDERED.

/s/ Donald C. Pogue
                                                Judge

Dated:     October 27, 2010
           New York, N.Y.

---

certification is warranted (Tr. of Ct. Hearing (Feb. 24, 2009) 32-33) – is the law of this case, and accordingly denies Plaintiffs' request for additional class discovery.

43